## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                      **NO.  15-61**

**SHELTON BARNES, ET AL.**                      **SECTION: "E" (5)**

### ORDER AND REASONS

This is a criminal action charging Abide Home Care Services, Inc. ("Abide")[1] and its associates with a scheme to defraud Medicare and to pay and receive illegal healthcare kickbacks.  Shelton Barnes—a licensed physician in Louisiana—has moved to suppress evidence seized during the execution of a search warrant at his office.[2]  Dr. Barnes argues the warrant affidavit was insufficient to establish probable cause.  The question presented is whether the good faith exception to the exclusionary rule applies. If it does not, the Court must determine whether the magistrate judge had a substantial basis for concluding that probable caused existed.  For the following reasons, the Motion is DENIED.

### BACKGROUND

On or about March 20, 2014, Special Agent Krista Bradford ("S.A. Bradford") presented a search warrant affidavit to the duty magistrate judge.  S.A. Bradford attested there was probable cause to believe that evidence of healthcare fraud[3] and

---

[1] According to the indictment, Abide's full name is "PCAH, Inc. a/k/a Priority Care at Home d/b/a Abide Home Care Services, Inc."

[2] R. Doc. 319.

[3] *See* 18 U.S.C. § 1347.

illegal kickbacks[4] could be found at Dr. Barnes's medical office on 3600 Prytania Street. The magistrate judge agreed and signed the warrant. Federal agents executed the search warrant on March 25, 2014 and seized several items of evidence.

On March 12, 2015, a federal grand jury in the Eastern of District of Louisiana returned a twenty-six count indictment. Count One charges Abide and seventeen co-defendants with an elaborate conspiracy to commit healthcare fraud. Count Two alleges a conspiracy involving eleven defendants to pay and receive illegal healthcare kickbacks. The remaining counts allege substantive acts of healthcare fraud related to six Medicare beneficiaries.[5] Dr. Barnes is a named defendant in Counts One and Two. Dr. Barnes is also charged with seven substantive acts of healthcare fraud.

## LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,"[6] but does not expressly prohibit the use of evidence obtained in violation of its commands.[7] This rule—the so-called "exclusionary rule"—was created by the courts.[8] Its purpose is to deter future Fourth Amendment violations, rather than redress the injury occasioned by an unconstitutional search or seizure.[9] Accordingly, "where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'"[10]

---

[4] *See* 42 U.S.C. § 1320a-7b.

[5] The Court previously severed Counts 23 through 26. *See* R. Doc. 263.

[6] U.S. Const. amend. IV.

[7] *Arizona v. Evans*, 514 U.S. 1, 10 (1995).

[8] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[9] *See United States v Leon*, 468 U.S. 897, 906 (1984).

[10] *Davis v. United States*, 131 S. Ct. 2419, 2426–27 (2011) (alteration in original) (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)).

The Court reviews a motion to suppress evidence seized pursuant to a warrant in two steps.[11]   First, the Court determines whether the good faith exception to the exclusionary rule applies.[12]  If the exception does not apply, the Court then determines whether the magistrate judge had a "substantial basis" for concluding that probable caused supported the warrant.[13]

## DISCUSSION

Dr. Barnes attacks the affidavit submitted in support of the search warrant on several grounds. With respect to each argument, the threshold issue is whether the good faith exception to the exclusionary rule applies.   Under this rule, evidence obtained pursuant to a search warrant later found to be invalid will not be suppressed if officers relied on the warrant in good faith.[14]  In determining whether the good faith exception applies, courts "do not attempt an 'expedition into the minds of police officers' to determine their subjective belief regarding the validity of the warrant."[15]  Rather, the analysis "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[16]

---

[11] *See United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014).  Although the Fifth Circuit has articulated this test as the standard of review on appeal, *see, e.g., United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006), district courts use it in the first instance as well.  *See, e.g., United States v. Hebert*, No. 09-154, 2011 WL 1103655, at *4 (E.D. La. Mar. 21, 2011); *United States v. Pickens*, No. 3:12−CR−356−D (01), 2013 WL 1155414, at *4 (N.D. Tex. Mar. 21, 2013).

[12] *United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014).  If the good faith exception applies, the Court does not proceed to the second step unless the case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates."  *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) (internal quotation marks omitted).  No such novel question exists in this case.

[13] *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997).

[14] *United States v. Leon*, 468 U.S 897 (1984).

[15] *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (quoting *Leon*, 468 U.S. at 922 n.23).

[16] *Leon*, 468 U.S. at 922 n.23.

## I.  FALSE STATEMENTS OF LAW AND OMISSIONS OF FACT REGARDING MEDICARE FRAUD

Dr. Barnes contends the warrant affidavit contains false statements of law and omissions of fact, both of which adversely affected the probable cause determination for Medicare fraud.  The legal analysis differs with respect to false statements of law and omissions of fact.  The Court bifurcates its analysis accordingly.

### A.  False Statements of Law

Dr. Barnes argues the affidavit erroneously states that a physician is required to meet a Medicare beneficiary in person before certifying that beneficiary for home healthcare services.  According to Dr. Barnes, the applicable Medicare regulations allow this "face-to-face" requirement to be satisfied through a nurse practitioner or a physician assistant.  Had the warrant affidavit contained a correct summary of the applicable law, Dr. Barnes argues the magistrate judge would not have found probable cause that Medicare fraud had been committed.  The question presented is whether the good faith exception to the exclusionary rule applies under these circumstances.

In *United States v. Leon*, the Supreme Court identified four scenarios in which the good faith exception does not apply as a matter of law.[17]  One scenario derives from an earlier decision in *Franks v. Delaware* in which the Court held that evidence must be suppressed when (1) the warrant affidavit contains a false statement of fact made knowingly or with reckless disregard for the truth, and (2) the remaining portion of the affidavit—with the falsehood(s) cast aside—is insufficient to establish probable cause.[18]

---

[17] 468 U.S. at 923.  The good faith exception does not apply in these scenarios, because officers would have no objectively reasonable grounds for believing the warrant was properly issued.  *See id.* at 922–23.
[18] *See* 438 U.S. 154, 155 (1978); *Mays*, 466 F.3d at 343.

As explained more fully below, *Franks* does not apply to the alleged misstatement of law in this case and therefore does not preclude application of the good faith exception.[19]

The question before the Court in *Franks* was whether a criminal defendant "ever ha[s] the right . . . to challenge the truthfulness of *factual statements* made in an affidavit supporting the warrant?"[20]  Dr. Barnes has not identified any cases extending *Franks* to misstatements *of law*.[21]  Instead, the Court's research indicates the relevant inquiry is whether the warrant affidavit contains false statements of fact.[22]  That no other court has applied *Franks* to misstatements of law is a strong reason for declining to do so in this case.

There is an equally compelling policy argument for refusing to extend *Franks*.  As the Supreme Court recognized over 50 years ago, "affidavits for search warrants . . . . are normally drafted *by nonlawyers* in the midst and haste of a criminal investigation."[23]  As an officer untrained in the law, S.A. Bradford cannot reasonably be expected to understand the nuances of the law, especially the "maze of Medicare regulations"—as Dr. Barnes described them—at issue in this case.[24]  In this situation, the officer's sole

---

[19] Because it is unnecessary to the Court's decision, the Court makes no finding regarding whether the warrant actually contains misstatements of law, *i.e.*, whether the warrant accurately describes the "face-to-face" requirement.

[20] 438 U.S. at 155 (emphasis added).

[21] The Court has been similarly unable to locate a single case in support of Dr. Barnes's position.

[22] *See, e.g.*, *United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002) ("[A] defendant is entitled to a *Franks* hearing upon making a substantial preliminary showing that a governmental official deliberately or recklessly caused *facts* that preclude a finding of probable cause to be omitted from a warrant affidavit . . . .") (emphasis added); *United States v. Runyan*, 290 F.3d 223, 235 (5th Cir. 2002) ("An unsupported assertion . . . does not give rise to the inference that the affiant acted with reckless disregard . . . particularly where the *misstated or omitted facts* in question are of only minor significance to the finding of probable cause.") (emphasis added); *United States v. Flowers*, No. No. CRIM.A. 04-15, 2005 WL 399370, at *1 (E.D. La. Feb. 17, 2005) ("In *Franks v. Delaware* . . . the Supreme Court held that criminal defendants have a limited right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of *factual statements* made in an affidavit supporting a search warrant.") (emphasis added).

[23] *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (emphasis added).

[24] *See* R. Doc. 336-2, p. 5.

responsibility is to attest to facts within his or her personal knowledge.[25] The determination of whether those facts support a finding of probable cause is committed exclusively to the magistrate judge,[26] who is "presumed to know the law and to apply it in making [her] decision."[27] Thus, it would be both unreasonable and unnecessary to expect officers to educate magistrate judges on the law applicable to a probable cause determination.

Even if the Court was inclined to apply *Franks* to the alleged misstatement of law in this case, Dr. Barnes's argument would still fail, because he cannot satisfy the first prong of the *Franks* test. This prong requires the defendant to make a "substantial preliminary showing" that a false statement was made intentionally or with reckless disregard of the truth.[28] The *Franks* Court elaborated on the showing required in some detail:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.[29]

As the foregoing makes clear, "the 'substantial preliminary showing' requirement is not lightly met."[30]

---

[25] An affidavit may also rely on hearsay in certain circumstances. *See United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1994).

[26] *Cf. Leon* 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment . . . .").

[27] *Cf. Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997) (internal quotation marks omitted).

[28] *See Franks*, 438 U.S. at 155–156.

[29] *Id.* at 171.

[30] *United States v. Cleveland*, 964 F. Supp. 1073, 1077 (E.D. La. 1997).

Dr. Barnes has not made this showing here.  According to Dr. Barnes, the alleged false statement of law is found in Paragraphs 41 and 12(c) of the warrant affidavit.[31] Dr. Barnes contends S.A. Bradford was "fully aware"[32] these paragraphs contained an incorrect statement of law yet he provides no offer of proof, as required by *Franks*.[33] Thus, Dr. Barnes's best argument is that the misstatement of law was made with reckless disregard.  This argument fails for largely the reasons set forth above.  There is nothing to suggest that S.A. Bradford—a non-lawyer—knew or should have known of "the full and complex regulatory scheme created by Medicare . . . under which Dr. Barnes was working."[34]

In sum, Dr. Barnes's *Franks* challenge regarding misstatements of law fails for two reasons.  First, *Franks* does not apply to the alleged misstatements of law in S.A. Bradford's affidavit.  Second, and in the alternative, Dr. Barnes has failed to make a substantial preliminary showing that S.A. Bradford included false statements of law intentionally or with reckless disregard for the truth.[35]

### B.  Omissions of Fact

Dr. Barnes also contends the warrant affidavit omits a crucial fact.  Specifically, Dr. Barnes contends the affidavit should have informed the magistrate judge that he

---

[31] *See* R. Doc. 319-1, p. 12, 19.

[32] R. Doc. 319-1, p. 2.

[33] According to Dr. Barnes, Leann Dodson's testimony in an unrelated case demonstrates she knew that physicians are not required to meet with beneficiaries face-to-face.  *See* R. Doc. 319-1, p. 12–13.  Even if this were true, Ms. Dodson's testimony does not constitute an offer of proof that *S.A. Bradford* knew that Paragraph 49 was a misstatement of law.

[34] R. Doc. 336-2, p. 4.

[35] Furthermore, even if Dr. Barnes could satisfy the first prong of *Franks*, it is unclear how the Court would handle the second prong, which normally requires the Court to excise the false statements of fact from the affidavit and determine whether the remaining allegations establish probable cause.  *See United States v. Dickey*, 102 F.3d 157, 162 (5th Cir. 1996).  Because no court—as far as this Court can tell—has applied *Franks* to false statements *of law*, there is no guidance as to how the Court should proceed.

lawfully performed face-to-face visits through nurse practitioners.[36]  Had the affidavit contained this omitted fact, Dr. Barnes argues the magistrate judge would not have found probable cause of Medicare fraud.

Although initially limited to affirmative misstatements of fact, *Franks* has been extended to cover omissions of fact as well.[37]  In order to prevail, a defendant must demonstrate "(1) the omission was knowingly and intentionally made or was made in reckless disregard for the truth and (2) the inclusion of the omitted information would render the affidavit insufficient to support a finding of probable cause."[38]  Dr. Barnes's argument would appear to fail at the outset, because there is no evidence, much less an offer of proof, that S.A. Bradford omitted any facts intentionally or with reckless disregard for the truth.  Nonetheless, the Fifth Circuit has held that with respect to omissions in a warrant affidavit, recklessness may be inferred when the omitted facts are "clearly critical" to a finding of probable cause.[39]

"Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."[40]  It involves a "practical, commonsense decision" by the magistrate judge as to whether, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[41]  In light of the "strong preference for warrants," doubtful or marginal cases should be resolved in favor of probable cause.[42]

---

[36] *See* R. Doc. 319-1, p. 19.
[37] *See, e.g., United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).
[38] *United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991).
[39] *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990).
[40] *Illinois v. Gates*, 462 U.S. 213, 231 (1983).
[41] *See United States v. Byrd*, 31 F.3d 1329, 1341 (1994).
[42] *See Leon*, 468 U.S. at 914.

The fact that Dr. Barnes lawfully performed face-to-face visits through licensed professionals is not "clearly critical" to a finding of probable cause in this case.[43]  In other words, even if this fact was included in the warrant affidavit, the remaining allegations establish a "fair probability" that a search would reveal evidence of Medicare fraud.[44]  The affidavit alleges that Abide and its associates "submitted false claims to Medicare for services not rendered, [and] for services rendered that were not medically necessary."[45]  The affidavit provides two examples.  Derrick Freeman—a social worker who was paid kickbacks for referrals to Abide—recruited a Medicare beneficiary identified as S.L.[46]  Although S.L. was not homebound,[47] Abide billed Medicare "for providing unnecessary home health services to S.L. for over 1,550 days."[48]  Dr. Barnes was one of the certifying physicians.[49]  A beneficiary identified as K.S. was subjected to a similar scheme.  K.S. was contacted by Abide after undergoing rotator cuff surgery and subsequently began receiving home health services.[50]  K.S. soon recovered but Abide continued to bill Medicare for "unnecessary home health services to K.S." for approximately 22 months.[51]  Again, Dr. Barnes was one of the certifying physicians.[52]  The foregoing allegations establish probable cause that Dr. Barnes knowingly participated in a scheme to defraud Medicare or to obtain money from Medicare by false

---

[43] For purposes of this opinion only, the Court assumes the omitted fact is true.
[44] *See United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) ("In determining whether probable cause exists without the false statements a court must make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit [minus the alleged misstatements], there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.") (alteration in original) (emphasis added) (internal quotation marks omitted).
[45] R. Doc. 332-1, ¶6.
[46] *Id.* at ¶¶ 23–24.
[47] *Id.* at ¶25.
[48] *Id.* at ¶24.
[49] *Id.* at ¶26.
[50] *Id.* at ¶27.
[51] *Id.*
[52] *Id.* at ¶29.

or fraudulent representations.[53]   This is not one of those "extreme cases" in which inclusion of an omitted fact would destroy probable cause.[54]

To the extent Dr. Barnes argues the above allegations are too "stale" to establish probable cause,[55] that argument fails as well.  As a general rule, probable cause must be established by "facts closely related in time to the issuance of the warrant."[56]  The Fifth Circuit has recognized an exception to this rule under the following circumstances: (1) "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity," and (2) "the type of evidence sought is the sort that can reasonably be expected to be kept for long periods of time in the place to be searched . . . ."[57]  Both circumstances are present in this case.

As Dr. Barnes recognizes in his motion, "[t]he Medicare billings and treatments attributable to Dr. Barnes, alleged in the Bradford Affidavit to be fraudulent, span as far back as *six years*," *i.e.*, from March 31, 2008 to seven months before the challenged search.[58]  For example, S.L. received unnecessary medical services from March 2009 to July 2013.[59]  Similarly, K.S. received unnecessary medical services from July 2011 to March 2013.[60]  The warrant affidavit clearly establishes a longstanding pattern of criminal activity.

The remaining question is whether evidence of this activity can reasonably be expected to have been preserved at Dr. Barnes's office for an extended amount of time. The warrant application sought authority to seize several items, including patient files,

[53] *See* 28 U.S.C. § 1347(a).
[54] *See Cleveland*, 964 F. Supp. at 1078 (recognizing that recklessness should only be inferred in "extreme circumstances").
[55] *See* R. Doc. 319-1, p. 10–12.
[56] *See United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993).
[57] *United States v. Rojas Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (internal quotation marks omitted).
[58] R. Doc. 319-1, p. 10 (emphasis added).
[59] *See* R. Doc. 332-1, ¶25.
[60] *See id.* at ¶28.

10

billing invoices, notes from physicians, contracts between Abide and its affiliates, correspondence to and from Medicare, computer hardware, and computer files. This evidence is clearly of the type that a medical office would maintain for long periods of time.[61]

## II. OMISSIONS OF LAW AND FACT REGARDING KICKBACKS

Dr. Barnes contends the warrant affidavit contains omissions of both law and fact relative to the alleged kickbacks. Dr. Barnes argues the affidavit failed to apprise the magistrate judge of certain safe harbor provisions to the anti-kickback statute, which is an omission of law.[62] Dr. Barnes further argues the affidavit failed to disclose that certain payments referenced in the affidavit were provided as legitimate compensation for his services as Abide's Medical Director, which is an omission of fact.[63] According to Dr. Barnes, had the magistrate judge been aware of this fact and the safe harbor provisions, the warrant would not have issued, because the magistrate judge would have concluded that the safe harbor provisions applied. In essence, Dr. Barnes raises another *Franks* challenge, this time to a different portion of the warrant affidavit.

---

[61] *See United States v. Streetman*, 207 F. App'x 414, 416 (5th Cir. 2006) (recognizing that computers and "computer files are of a type that could be expected to be kept for long periods of time in the place to be searched."); *United States v. Cherna*, 184 F.3d 403, 410 (5th Cir. 1999) (recognizing that "financial records typically are retained for long periods of time" at "ongoing businesses").

[62] In his motion to suppress, Dr. Barnes argues the applicable safe harbor is 42 U.S.C. § 1320a-7b(b)(3)(B). *See* R. Doc. 319-1, p. 19. In his reply memorandum, Dr. Barnes argues the applicable safe harbor is found in 42 C.F.R. § 1001.952(d). *See* R. Doc. 336-2, p 5. These safe harbor provisions are discussed in great detail in a prior opinion. *See generally United States v. Crinel*, No. 15-61, 2015 WL 3755896 (E.D. La. June 16, 2015).

[63] Dr. Barnes raised this argument for the first time in his reply memorandum. "It is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008); *see also United States v. Palazzo*, No. 05–266, 2013 WL 160123, at *2 n.5 (E.D. La. Jan. 15, 2013) ("New claims raised for the first time in a reply memorandum need not be considered by the district court."). Because this is a criminal case, and because Dr. Barnes raises a potentially dispositive issue, the Court will address his argument on the merits.

### A.  Omissions of Law

The Court has already held that *Franks* does not apply to affirmative misstatements of law.  That reasoning applies with equal force to omissions of law.  Accordingly, the Court holds that *Franks* does not apply to any omission of law by S.A. Bradford.

### B.  Omissions of Fact

Dr. Barnes's *Franks* challenge with respect to omissions of fact fails at the outset.  Dr. Barnes argues the omitted facts are relevant to establishing the applicability of certain safe-harbor provisions to the anti-kickback statute.[64]   These safe-harbor provisions constitute affirmatives defenses.[65]   Courts routinely reject *Franks* challenges based on the omission of facts that might have established an affirmative defense.[66]  The Court finds the reasoning in these opinions persuasive.

Even if the Court considered Dr. Barnes's arguments on the merits, and if Dr. Barnes could establish the facts were omitted deliberately or with reckless disregard, and if the Court added to the affidavit the facts Dr. Barnes contends should have been there in the first place,[67] there still would be probable cause to search Dr. Barnes's office.  As previously explained, the warrant affidavit established probable cause that a search

---

[64] *See* R. Doc. 340, p. 5.

[65] *See Crinel*, 2015 WL 3755896, at *2 (finding the safe-harbor provision in  42 U.S.C. § 1320a-7b(b)(3)(B) is an affirmative defense); *United States v. Norton*, 17 F. App'x 98, 102 (4th Cir. 2001) (finding the safe-harbor provision in 42 C.F.R. § 1001.952(d) is an affirmative defense); *United States v. Davis*, No. H–14–171S–12, 2014 WL 6679199, at *5 (S.D. Tex. Nov. 25, 2014) (same).

[66] *See, e.g.*, *United States v. Cserna*, No. 96-10093, 110 F.3d 70, at *2 (9th Cir. 1997) (unpublished); *United States v. Christie*, 570 F. Supp. 2d 657, 672 (D. N.J. 2008); *United States v. Hazelwood*, No. 1:10 CR 150, 2011 WL 2553265, at *15 (N.D. Ohio June 28, 2011); *United States v. Call*, No. 2:09–cr–00079–KJD–RJJ, 2009 WL 6047137, at *7 (D. Nev. Nov. 24, 2009); *United States v. Mahmood*, No. 07-MJ-603 (SMG), 2009 WL 1118085, at *1 (E.D. N.Y. Apr. 27, 2009); *United States v. McCollum*, No. 8:05CR256, 2005 WL 3159662, at *6 (D. Neb. Nov. 28, 2005).

[67] As previously explained, when a defendant challenges the omission of information from a warrant affidavit, the second stage of the *Franks* analysis requires the court to determine whether inclusion of the omitted information would have destroyed probable cause.  *See Cronan*, 937 F.2d at 165.

would reveal evidence of healthcare fraud.  Any additions to the affidavit concerning the alleged kickbacks do not affect the allegations that Dr. Barnes participated in a scheme to defraud Medicare by falsely certifying beneficiaries for home healthcare services.[68]

## III.  STALE FACTS

The Court has ruled already that the factual allegations in the warrant affidavit are not stale.  More importantly, even if the allegations were stale, they were not so stale as to render good-faith reliance on the warrant entirely unreasonable.[69]  In other words, it was objectively reasonable for a well-trained officer to believe the warrant established probable cause.  The good faith exception to the exclusionary rule applies.

## IV.  FAILURE TO ADEQUATELY DESCRIBE THE SEARCH TARGET

Dr. Barnes contends evidence should be suppressed, because the warrant affidavit fails to describe the place to be searched with sufficient particularity.  The warrant identifies the search target as "3600 Prytania Street, Suite 50, New Orleans, LA."[70]  Paragraphs 44 and 45 of the warrant affidavit, however, describe the search target as "Abide's office."  Dr. Barnes contends this discrepancy required the magistrate judge "to resolve the location conflict on information outside of the four corners of the Warrant, which is in violation of the Fourth Amendment . . . ."[71]  The question presented is whether the good faith exception to the exclusionary rule applies in these circumstances.

In *Leon*, the Supreme Court held the good faith exception does not apply when a warrant is "so facially deficient . . . in failing to particularize the place to be searched or

---

[68] Indeed, healthcare fraud and illegal kickbacks are governed by different statutes.  *See* 18 U.S.C. § 1347; 42 U.S.C. § 1320a-7b.
[69] *See Pena-Rodriguez*, 110 F.3d at 1130–31.
[70] *See, e.g.*, R. Doc. 332-1, p. 2.
[71] R. Doc. 319-1, p. 20.

the things to be seized . . . that the executing officers cannot reasonably presume it to be valid."[72]  As the Government notes in its opposition memorandum, the search warrant and supporting affidavit collectively identify Dr. Barnes's office as the search target at least eight times.  For example, the search warrant is prominently captioned "In the Matter of the Search of 3600 Prytania Street, Suite 50, New Orleans, Louisiana."[73]  The next page—entitled "Description of Locations To Be Searched"—states that "Dr. Shelton Barnes' office is located at 3600 Prytania Street, Suite 50, New Orleans, Louisiana."[74]  This page also includes a physical description of the premises and a color photograph that depicts a Touro medical building with the address "3600."  Furthermore, as in the search warrant, the supporting affidavit is captioned "In the Matter of the Search of 3600 Prytania Street, Suite 50, New Orleans, Louisiana."[75]  The body of the affidavit identifies the search target as "3600 Prytania Street, Suite 50, New Orleans, Louisiana" in four separate paragraphs.[76]  Despite these several references to 3600 Prytania Street, Paragraph 44 of the affidavit states that "Affiant seeks authority to search *Abide's office*," and Paragraph 45 states that "probable cause exists . . . to search . . . *Abide's office*."[77]

This technical error does not preclude application of the good faith exception to the exclusionary rule.[78]  It was manifestly clear from the repeated references to 3600

---

[72] 468 U.S. at 923.

[73] R. Doc. 332-1, p. 1.

[74] *Id.* at p. 2.

[75] *Id.* at p. 9.

[76] *See id.* at ¶¶5, 52, 53, 55.

[77] *Id.* at ¶¶44, 45.

[78] *See United States v. Allen*, 625 F.3d 830, 838 (5th Cir. 2010) ("[N]ot every deficient warrant is so deficient that an officer would lack a reasonable basis for relying on it."); *United States v. Pickens*, No. 3:12–CR–356–D (01), 2013 WL 1155414, at *9 (N.D. Tex. Mar. 21, 2013) ("[E]ven if the warrant violated the Fourth Amendment's requirement to 'particularly describ[e]' the things to be seized, the good-faith exception still applies unless the executing officer could not reasonably have concluded that the warrant was valid.") (second alteration in original).

Prytania Street that the place to be searched was, in fact, 3600 Prytania Street, not Abide's office.   "To rule in these circumstances that this warrant was 'so facially deficient' that its executing officers could not 'reasonably presume it to be valid,' would egregiously elevate form over substance."[79]  It was objectively reasonable for officers in this case to believe the warrant comported with the requirements of the Fourth Amendment.  Therefore, the good faith exception to the exclusionary rule applies.

**CONCLUSION**

For the reasons previously stated, the motion is denied.

**New Orleans, Louisiana, this 27th day of August, 2015.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[79] *See United States v. Gordon*, 901 F.2d 48, 50 (5th Cir. 1990).